UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT PENNSYLVANIA

| | |
|---|---|
| RONALD GUIDAS, | : |
| Plaintiff, | : Civ. Action No. 2:24-cv-305-WSS |
| v. | : Hon. William S. Stickman IV |
| UNITED STATES STEEL CORPORATION, | : |
| Defendant. | : |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, and 29 U.S.C. § 185, Defendant United States Steel Corporation ("Defendant USS") hereby submits this Notice of Removal of a case from the Court of Common Pleas of Allegheny County and states as follows as the bases for removal.

## BACKGROUND

1. On or about February 1, 2024, Plaintiff Ronald Guidas ("Plaintiff") filed a "Class Action Complaint" (the "Complaint") captioned *Ronald Guidas v. United States Steel Corporation,* Case ID GD-24-001257, in the Court of Common Pleas of Allegheny County. A true and correct copy of the Complaint is attached hereto as Exhibit A.

2. On February 7, 2024, Plaintiff served his Complaint on Defendant USS. ECF No. 1, Exhibit A.

3. On March 6, 2024, Defendant USS timely removed this matter to the United States District Court for the Western District of Pennsylvania on the basis of preemption under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as Plaintiff's employment with Defendant USS was covered by a collective bargaining agreement called the Basic Labor

1

Agreement ("BLA").  ECF No. 1.  The case was captioned *Ronald Guidas v. United States Steel Corporation*, Case ID 2:24-cv-00305, and assigned to the Honorable Judge William S. Stickman IV.

4. On March 22, 2024, Plaintiff filed a Motion to Remand the lawsuit to the Court of Common Pleas for Allegheny County.  The Parties fully briefed the issue.  ECF No. 7.

5. On May 28, 2024, this Court issued an Order granting Plaintiff's Motion to Remand, holding in pertinent part that "[r]esolution of Guidas's claim related to post-shift showering would require mere consultation of the BLA, not interpretation.  The parties do not dispute the meaning of the provision."  ECF No. 18.  The Court then found "the BLA is silent" as to Plaintiff's walking time and donning and doffing PPE claims.  *Id.*

6. On July 12, 2024, Plaintiff filed an Amended Complaint.  A copy of that Amended Complaint is attached hereto as Exhibit B.

7. On February 3, 2025, Defendant USS then timely filed its Answer.

8. Since Defendant USS filed its Answer, the Parties have been engaging in discovery.  In the course of discovery, Defendant USS discovered that, in February 2021, hourly employees at its Clairton plant filed a grievance asserting they were entitled to compensation for the activities upon which Plaintiff bases his suit, and the grievance commission determined that such compensation was not owed to the grieving hourly employees under the terms of the BLA.  *See* Declaration of David J. Coombes ("Coombes Decl.") attached hereto as Exhibit C, and Exhibit 1 attached thereto.

9. As explained further below, this grievance shows why this matter is preempted under the LMRA, specifically because Plaintiff's claims are subject to an interpretation, not a mere consultation, of the BLA's terms.  Because the Court did not have an opportunity to review the

2

information in this grievance, Defendant USS files this removal to allow the Court to consider the preemptive effect of this grievance on Plaintiff's claim.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

10. This Notice is timely filed under 28 U.S.C. § 1446(b)(3) because Defendant USS has filed this Notice of Removal within thirty (30) days of receipt of documentary evidence that makes this case removable. *See McLaren v. UPS Store Inc.*, 32 F.4th 232, 239-40 (3d Cir. 2022) ("the § 1446(b) clocks are triggered based only on what a defendant can ascertain from the four corners of the plaintiff's complaint or other paper the defendant receives" and finding § 1446(b) does not impose "a duty on defendants to investigate the records they possess" to determine whether federal jurisdiction exists).

11. The Court of Common Pleas of Allegheny County, in which Plaintiff's Complaint is filed, is within this Court's District. Therefore, the action is properly removable to this Court pursuant to 28 U.S.C. § 1446(a).

12. Pursuant to 28 U.S.C. §1446(d), Defendant has provided this written Notice of Removal to all adverse parties and will promptly file a Notice of Filing of Notice of Removal with the Clerk of the Court of Common Pleas of Allegheny County, Commonwealth of Pennsylvania.

## LMRA PREEMPTION

13. This action is being removed to this Court on the basis of preemption under 29 U.S.C. § 185(a), as it implicates federal law because Plaintiff attempts to use the state law upon which he based his claim to re-define the carefully negotiated terms of a long-standing collectively bargained agreement ("CBA") governing the actions of the Parties in interest, and the claim involves a controversy requiring the interpretation of that CBA.

14. In particular, Plaintiff is a member of the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"), a

sophisticated labor union with whom Defendant USS negotiated the BLA. *See* Declaration of Rebecca S. Bloom ("Bloom Decl."), ¶ 3, previously filed as ECF No. 1.002.

15. Article Two, Section A.1., of the BLA recognizes the USW as the exclusive representative of the bargaining unit to collectively bargain with USS over rates of pay, hours of work, overtime, compensable work, and other terms and conditions of employment. *Id.* at ¶ 4.

16. Plaintiff seeks to represent a class of employees who are also simultaneously represented by the USW and whose employment with USS is governed by the terms in the BLA.

17. At all times relevant to this action, Plaintiff was employed at Defendant USS's Clairton plant, which is specifically covered by the BLA. *Id.* at ¶ 5.

18. Plaintiff's Complaint asserts a cause of action under Pennsylvania's Minimum Wage Act ("PMWA") based on Defendant USS's alleged failure to compensate him and putative Class Members for all time performing certain tasks prior to and after their scheduled shifts. *See* Compl. ¶¶ 10-12. The Complaint also "challenges the legality under the PMWA of Defendant's company-wide timekeeping, compensation, and payroll practices." *Id.* at ¶ 16.

19. The BLA explicitly acknowledges that USS and the USW carefully and mutually negotiated terms governing the duties and other aspects of USS employees' terms and conditions of employment, including compensation, payroll practices, and various activities applicable to Plaintiff and the class of employees he purports to represent through this concerted activity. *See, e.g.,* Bloom Decl. at Ex. 1, Article Two, Section A.4 ("The Parties acknowledge that this Agreement contemplates a substantial restructuring of bargaining unit work that broadens the duties historically performed by the bargaining unit…"). The BLA terms govern Plaintiff's (and other purported class members') schedule of work, compensable work, wages, overtime pay (including methods of calculating overtime), and job descriptions, the precise issues present here.

20. The BLA's mutually negotiated terms also provide that Local Working Conditions, which are defined as "specific practices or customs which reflect detailed applications of matters within the scope of wages, hours of work or other conditions of employment…," established prior to 2003, may be changed or eliminated by USS unilaterally "if the basis for the existence of the Local Working Condition is changed or eliminated," or may remain if "not in conflict with benefits established by" the BLA, "except as they are changed or eliminated" in accordance with the BLA's terms. *Id.*, Article Five, Section A.

21. The BLA's mutually negotiated terms also provide compensation for certain wash-up activities for employees "who are required to shower at the end of their shift," while expressly not providing compensation for other pre- and post-shift activities. *See,* e.g., Bloom Decl. at Ex. 1, Appendix N. That is, the authorized Parties directly negotiated and agreed upon which employee activities were deemed compensable, and which were not.

22. USS's investigation of this suit revealed that on February 26, 2021, hourly employees at its Clairton Plant filed a grievance alleging USS's "unilateral change to the well established working condition of providing 20 minute [paid] wash-up time at the end of each shift" violated the BLA's terms. The USW, operating on the side of the hourly employees, stated its position on the issue as follows:

> The Long Standing and Well Established Working condition/practice of 20 Minutes Wash-Up Time violates Article Five, Section A. Local Working Conditions. And Any And All Applicable Articles, Sections, and Appendix of the B.L.A.

*See* Coombes Decl., Exhibit 1, p. 1. Approximately 25 hourly employees joined the grievance. *Id.* at p. 3.

23. The grievance proceeded to Step 2 of the grievance process, as laid out in the BLA. *See* Bloom Decl., Exhibit 1, Article V, Section I.3. During Step 2 proceedings, the Company

5

provided a contrary interpretation of the BLA on this issue, namely "the 1974 Local Agreement became void when Appendix N – FLSA Matters was agreed upon in the BLA in 2008 and only those employees that worked in OSHA regulated areas were eligible for wash-up time." Coombes Decl., Exhibit 2, p. 1. Because the grieving employees did not work in OSHA regulated areas, the Company continued, they were not entitled to wash-up time under the BLA. Further, "[a]ll employees are provided access to shower facilities and the Company does not prohibit them from showering after their shift has ended." *Id.*

24. On April 14, 2021, the grievance committee provided its position on the grievance, denying the grievance because "[t]here was no violation of the BLA." Stated more fully:

> the Company provides wash-up time to only those employees that work in OSHA regulated areas at the Clairton Plant. All Maintenance Shop employees, including… those included in this grievance, do not work in OSHA regulated areas and therefore the Company is not required to provide wash-up time… The Company does not prohibit any employee from washing their hands and face as per the OSHA Chromium Standard or from showering after their shift has ended.

*Id.* at p. 2.

25. Through this suit, Plaintiff engages in concerted activity and attempts to use the PMWA and associated regulations to re-define the carefully negotiated terms of the CBA and expand the scope of what activities USS and the USW mutually agreed were "compensable." Plaintiff is, in effect, alleging a breach of the contractual provisions contained in the BLA, or at the very least, adjudication of Plaintiff's PMWA claim would necessitate interpretation and application of relevant provisions of the BLA governing Plaintiff's job duties, compensable work, overtime, and wages. As such, Plaintiff's claim is inextricably linked with the terms and conditions of his employment, as governed by the terms of the BLAs.

26. Plaintiff filed this suit after hourly employees in USS's Mon Valley Works already attempted, unsuccessfully, to seek pay for such activities under the terms of the BLA through the

BLA's specifically provided grievance process. Those grievance records show differing and contrary interpretations of the BLA's terms between USS and the USW, on behalf of hourly employees. The hourly employees used their grievance to pursue their contrary interpretation of the BLA's terms and receive additional hourly pay or otherwise compensated time to perform "portal-to-portal activities," and specifically post-shift activities. The records show, however, that based on the grievance committee's interpretation of the BLA, such time was *not* compensable under the BLA's terms for employees who did not specifically qualify under Appendix N.

27. Under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, *et seq.,* this Court has original jurisdiction over lawsuits concerning "contract[s] between an employer and a labor organization," such as Plaintiff alleges here. 29 U.S.C. § 185(a). The importance of complete preemption under the LMRA arises because, as the Supreme Court explained, "the subject matter of § 301(a) is particularly one that calls for uniform law." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.,* 369 U.S. 95, 103 (1962) (cleaned up). The need for uniformity is especially important because, absent uniform interpretation of collective bargaining agreements, "[t]he possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements." *Id.*

28. As the Supreme Court explained more recently, "[o]nce [a] collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation and might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes… A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal law." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210 (1985).

29. The Supreme Court's concerns expressed in *Lueck* are especially pressing here. The BLA contains terms carefully negotiated by USS and USW, including delineating what the parties determined to be compensable activities. Plaintiff's claim would seek to apply the PMWA's terms "to define the meaning or scope of a term in a contract suit", just as the Supreme Court cautioned against in *Lueck.* 471 U.S. at 210.

30. Because the BLA's terms apply to workers throughout the nation subject to multiple state minimum wage laws, not only Pennsylvania employees subject to the PMWA, Plaintiff's suit—if not preempted—would nullify the negotiations between USS and the USW recognizing that USS is not obligated to pay employees for preparatory and closing activities which occur outside of their scheduled shift or away from their worksite—and potentially other BLA terms—despite USS and the USW having negotiated those terms into every national collective bargaining agreement or BLA since 1947, and would disrupt the orderly administration of the BLAs. This is exactly the sort of disruptive effect the Supreme Court cautioned could "substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." *Lueck,* 471 U.S. at 210. As such, this suit must be pre-empted under the LMRA.

31. Additionally, "when resolution of a state-law claim is substantively dependent upon analysis of the terms of an agreement made between parties in a labor contract, that claim must be treated as a[n LMRA] claim[.]" *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985); *see Johnson v. NBC Universal, Inc.,* 409 Fed. App'x 529, 532 (3d Cir. 2010) ("State law claims are completely preempted by the LMRA when the claims are substantively dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]") (internal quotation omitted); *Penn. Fed'n Bd. of Maintenance Way Emps. v. Nat'l R.R. Passenger Corp.,* 989 F.2d

8

112, 115 (3d Cir. 1993) (removal of claim under PMWA alleging that certain uncompensated activities were compensable under the statute was preempted by the LMRA because the claim "required interpretation of the collective bargaining agreement to see exactly what the duties of the employees are").

33. Here, the BLA sets forth USS's and the USW's mutually agreed terms concerning the terms and conditions of the bargaining units' employment with USS, including but not limited to wages, job duties, overtime, compensable work, and hours worked. This includes explicit terms in Appendix N providing additional compensation for certain post-shift wash-up activities for employees "who are required to shower at the end of their shift"—the very activities underlying Plaintiff's suit—while not providing compensation for other pre- and post-shift activities. *See* Bloom Decl., Exhibit 1, Appendix N. Logically, the reasoning behind this BLA terms is that other employees who do not qualify for wash-up time under Appendix N are not "required" to perform such activities.

33. Even if Plaintiff did not seek to re-define the terms of the BLA through his suit—which he does—determining whether Plaintiff is entitled to compensation under the PMWA (and corresponding regulations), would ask the Court to determine whether USS requires him to be on the premises of the employer, to be on duty, or to be at the prescribed workplace to perform the various activities at issue. *See* 43 Pa. Stat. § 333.104.

34. As the Third Circuit recognized in *Nat'l R.R. Passenger Corp.,* "it is impossible to determine whether [the activities of the plaintiff are] 'part of the duties of the employee' without interpreting the collective bargaining agreement to see exactly what the duties of the employees are." 989 F.2d at 115. Additionally, it is impossible to determine whether the activities occur

9

"'during normal working hours' without interpreting the collective bargaining agreement to ascertain the normal working hours." *Id.*

35. Similarly, because Plaintiff alleges actions on the part of USS that would be in breach of the BLA, and resolution of Plaintiff's PMWA claim would necessitate the analysis and interpretation of his job duties, hours of work, compensable duties, and wages as provided in the governing BLAs, this Court has original jurisdiction over his claims pursuant to the LMRA's complete preemption of such claims.

36. Additionally, the BLA calls for USS, the USW, and employees of the bargaining unit to grieve and arbitrate differences arising between USS and the USW as to the interpretation or application of, or compliance with, the provisions of the BLA. The USW and USS have done so on this very issue. What's more, the grievance commission resolving that grievance decided such compensation is not required under the BLA.

37. Now, rather than proceeding through the grievance process, as is required by the BLA and the LMRA itself, Plaintiff has instead filed suit in the Court of Common Pleas for Allegheny County. His concerted claims on behalf of hourly-represented employees rely, inescapably, on the Court reaching a different conclusion than the grievance commission that addressed this very issue. Indeed, this is the exact inherent conflict which the Supreme Court held must be subject to preemption under the LMRA in *Lueck*:

> "the possibility of conflicting substantive interpretation under competing legal systems [that] would tend to stimulate and prolong disputes as to its interpretation and might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes… A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal law."

*Lueck,* 471 U.S. at 210.

38. Plaintiff's clear circumvention of the grievance and arbitration process—in the plain hopes of finding a court which will interpret the BLA more kindly or ignore its terms altogether—is no more than an attempt to get a second bite at the apple. Such is neither permitted under the LMRA, nor productive for collective bargaining as a whole.

39. Additionally, because Plaintiff's lawsuit is so clearly interfering with the collective bargaining process, in usurping the role of hourly employees' designated representative from the USW and in seeking to force USS to change pay practices unilaterally instead of through collective bargaining, Plaintiff's suit is further preempted by the NLRA.

40. Finally, the PMWA and associated regulations are in direct conflict with the FLSA on improper topics, and so Plaintiff's claims are also preempted by the FLSA and Portal-to-Portal Act.

## **MISCELLANEOUS**

41. Defendant USS files this Notice without waiving any defenses to the claims asserted by Plaintiff, without conceding that Plaintiff has stated claims upon which relief can be granted, and without conceding that Plaintiff is entitled to any damages against Defendant in any amount.

42. By filing this Notice of Removal, Defendant does not make any admission of fact, law, or liability, including expressly without conceding that Plaintiff is similarly situated to the alleged purported class. Defendant expressly reserves the right to raise any and all available procedural and substantive defenses.

43. Upon filing this Notice of Removal, Defendant USS will provide a written notification to Plaintiff and will file a Notice of Filing of Notice of Removal with the clerk of the Court of Common Pleas of Allegheny Count, Commonwealth of Pennsylvania. A copy of the Notice of Notice of Removal is attached as Exhibit D (without exhibits).

WHEREFORE, Defendant USS respectfully requests that this action, previously pending in the Court of Common Pleas of Allegheny County, be removed to the U.S. District Court for the Western District of Pennsylvania.

Date: December 12, 2025                                         Respectfully submitted,

JACKSON LEWIS P.C.

*/s/ Katelyn M. O'Connor*
Katelyn M. O'Connor, PA ID No. 308922
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 232-0404 (Tel)
(412) 232-3441 (facsimile)
Katie.O'Connor@jacksonlewis.com

***Counsel for Defendant United States Steel Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025 the foregoing document was filed with the clerk of this Court via the CM/ECF system, which will effectuate service upon the following counsel of record:

Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
**WINEBRAKE & SANTILLO, LLC**
715 Twining Road
Suite 211
Dresher, PA 19025
Tel:   (215) 884-2491
asantillo@winebrakelaw.com

Timothy Conboy, Esq.
**CONBOYLAW, LLC**
733 Washington Road
Suite 201
Pittsburgh, PA 15228
Tel:   (412) 343-9060
tim@conboylaw.com

*/s/ Katelyn O'Connor*
Katelyn O'Connor

***Counsel for Defendant United States Steel Corporation***